## STATE EX REL. RUDOLPH MOSER v. AGNES KAML AND OTHERS.[1]

November 28, 1930.

No. 28,035.

[1]Reported in 233 N. W. 802.

524

*W. E. Rowe* and *Alexander Fosmark*, for appellants.

*M. J. Hegland*, for respondent.

HILTON, J.

Appeal from a judgment in favor of Rudolph Moser in the sum of $15.25 as costs and disbursements and awarding to him a peremptory writ of mandamus requiring the officers of the school district to deliver him a proper school district order for $361.13.

Appellants are respectively the chairman, clerk, and treasurer of school district No. 88, Roseau county, Minnesota. On and prior to April 15, 1922, Moser, the relator (respondent here), was the duly qualified and acting treasurer of said district, and on said date the Scandinavian American State Bank of Badger was declared insolvent and closed. It has ever since been in the hands of the commissioner of banks; no dividends have been paid though it has been fully liquidated. At the time of the closing of said bank Moser had therein on deposit $1,097.76 in open account and certificates of deposit, $361.13 of which was school district money. The bank had not been designated as a depository for school district funds, and the treasurer was absolutely liable therefor. He reimbursed the school district for the amount in question.

In 1929 the legislature enacted L. 1929, p. 72, c. 67, which provided:

"That where any school treasurer has or shall hereafter reimburse the district for loss of funds of the district on deposit in any bank which has or may become insolvent, such district may reimburse

said treasurer for money so paid when a majority of the electors voting thereon at an annual or special meeting vote so to do, providing the notice of such annual or special meeting shall specify that such matter will be considered at such meeting."

The matter was properly submitted in accordance with the above quoted act at the following annual meeting, July 16, 1929, and a majority of the electors voted in favor of such reimbursement. Being in doubt as to whether the reimbursement could legally be made, appellants refused to comply with the act and mandamus proceedings were instituted with the result indicated.

The appellants contend: (a) That the act is void in that it is class legislation, special, indefinite and of unequal operation, and prohibited; (b) that the petition of relator does not state facts sufficient to constitute a cause of action, in that relator did not bring himself within the provisions of the act, not having repaid the amount of the funds received by him and never having made such deposit of the school district money as to constitute "funds of the school district on deposit" in an insolvent bank. (The stipulated facts show that the reimbursement was made.) Although the funds were not on deposit in the bank in the name of the school district, they were nevertheless school district funds and come within the purview of the remedial act.

■ The act is not prohibited by art. 9, § 12, of the state constitution. This section provides for the enactment of "suitable laws * * * for the safekeeping, transfer and disbursement of the state and school funds" and places duties and obligations upon officers and other persons charged with the safekeeping thereof. It is not self-executing but requires legislation to carry it into effect. Farmers & M. State Bank v. Consolidated School Dist. No. 3, 174 Minn. 286, 219 N. W. 163, 65 A. L. R. 1407.

From an early date in this state the obligation of a school district treasurer to account for all school funds coming into his hands has been absolute. He is liable for the same even if their loss is without negligence or fault on his part. Such was the result of the interpretation placed upon the statutory enactment by

the courts. Board of Education v. Jewell, 44 Minn. 427, 46 N. W. 914, 20 A. S. R. 586. See also State v. Bobleter, 83 Minn. 479, 86 N. W. 461.

In the Jewell case (1890), 44 Minn. 427, 46 N. W. 914, 20 A. S. R. 586, the school district and board of education had voted to discharge the obligation of the treasurer for loss by burglary of the school funds 'without fault on his part. That attempt to relieve the treasurer proved ineffectual. There was no statutory authority therefor. However there was a clear indication that the legislature had power so to provide.

A relaxation of the rigid rule as to liability appears in L. 1907, p. 148, c. 133. There provision was made for deposit of school funds in banks designated by the school district, and the district treasurer and his bondsmen were released from liability for loss of funds so deposited. That, with a few minor changes not here important, is still the law recognized by the courts as valid. The legislature had an equal right to enact the remedial 1929 law with which we are here concerned. It was a matter well within the legislative discretion.

It is further contended that L. 1929, p. 72, c. 67, is violative of art. 4, §§ 33 and 34, of the state constitution, which generally prohibits the passage of "local or special law regulating the affairs of, * * * any * * * school district, or * * * prescribing the powers and duties of the officers * * *," and providing that "the legislature shall provide general laws * * * and all such laws shall be uniform in their operation throughout the state." The 1929 law is not repugnant to the constitutional provisions last referred to. It applies to all school districts. It covers school district treasurers who have or shall hereafter reimburse the district for loss of school funds on deposit in any bank which has or shall thereafter become insolvent. It does not require the reimbursement of the treasurer but grants the privilege when a majority of electors at a proper meeting so determine. This was but an authority extended to all school districts in like situation to carry out a moral and equitable obligation if a majority of electors so decided. It is not class or special legislation; it operates uniformly and is valid. See

generally 1 Dunnell, Minn. Dig. (2 ed.) § 1669, et seq. and cases cited. The unconstitutionality of a law must be very clear to justify a court in declaring it void.

It is not necessary to more than state that appellants' claim, that the act violates art. I, § 10, of the United States constitution, in that it impairs the obligation of contract, is wholly without merit. There was no such impairment. The treasurer had fulfilled his contract.

■ A further claim is made that the statute of limitation of actions had run because more than six years had elapsed since respondent had reimbursed the school district. The record is silent as to when the reimbursement was made. However, as was well stated by the trial court in its memorandum, the statute of limitations affected the remedy and not the right. 4 Dunnell, Minn. Dig. (2 ed.) § 5587. The district, pursuant to legislative authority, by its vote in effect decided not to avail itself of the limitation defense if it had it.

Affirmed.

WILSON, C. J. (dissenting).

Such laws as L. 1929, p. 72, c. 67, are sometimes passed. In the absence of constitutional prohibitions they are generally sustained, not because they are wholesome or desirable, but because they are within the power of the legislature. 38 A. L. R. 1512, Anno. Our constitution contains a prohibition, art. 4, § 33, by stating that the legislature cannot authorize "taxation for a private purpose." It would seem to follow that it could not authorize the use of money raised by taxation for a "private purpose." Taxation is for public purposes and not for private relief or gratuity. Here the school treasurer had no right in law or in equity to a return of the money. Its return would amount to nothing short of a gift. Raising money by taxation and so using it is in effect taking one man's money and giving it to another. Our constitution hoped to avoid such a vicious practice.

STONE, J. (dissenting).

I concur in the views of the Chief Justice.